**PACIFIC MARITIME ASSOCIATION and International Longshoremen's and Warehousemen's Unions, Plaintiffs-Appellees,**

v.

**Frank A. QUINN, as an individual, Frank A. Quinn, as Regional Director of the Equal Employment Opportunity Commission, and Equal Employment Opportunity Commission, Defendants-Appellants.**

**Booker GIBSON et al., Plaintiffs-Appellants,**
**United States Equal Employment Opportunity Commission and State of Oregon, through its Bureau of Labor, Intervenors on behalf of Appellants,**

v.

**LOCAL 40, SUPER–CARGOES & CHECKERS OF the INTERNATIONAL LONGSHOREMEN'S & WAREHOUSEMEN'S UNION and Pacific Maritime Association, Defendants-Appellees.**

Nos. 25355, 71–1217.

United States Court of Appeals,
Ninth Circuit.

June 30, 1972.

Rehearing Denied Oct. 10, 1972.

No. 25355:

Phillip B. Sklover (argued), Frank H. Quinn, Julia Cooper, Russell Specter, Deputy Gen. Counsel, Stanley P. Hebert, Gen. Counsel, Washington, D. C., Thomas N. Trotta, Asst. Atty. Gen. (argued), H. J. Belton Hamilton, Asst. Atty. Gen., Portland, Or., for appellant.

Richard Ernst (argued), of Ernst & Daniels, Tollen, Norman Leonard, of Gladstein, Anderson, Leonard & Sibbett, San Francisco, Cal., for appellees.

No. 71–1217:

Norman Leonard (argued), San Francisco, Cal., Chas. Robinowtiz, Frederick T. Smith, of Dusenbery, Martin, Bischoff & Templeton, Portland, Or., for appellants.

Phillip S. Sklover (argued), Julia P. Cooper, Atty., John de J. Pemberton, Jr., Deputy Gen. Counsel, Stanley P. Hebert, Gen. Counsel, Washington, D. C., Thomas N. Trott, Asst. Atty. Gen., Portland, Or., intervenors for appellants.

Raymond J. Conboy (argued), Frank Pozzi, of Pozzi, Wilson & Atchison, Marshall Chenery, of Mize, Kriesien, Fewless, Chenery & Kelley, Portland, Or., for appellees.

Before HAMLIN and MERRILL, Circuit Judges, and GRAY, District Judge *.

MERRILL, Circuit Judge:

These two cases, consolidated for purposes of argument, arise under Title VII of the Civil Rights Act of 1964, 42 U.S. C. §§ 2000e et seq. and present identical questions of law. In the *Gibson* case, suit was brought in the District Court for the District of Oregon to permanently enjoin defendants from engaging in unlawful racial discrimination in employment practices. In the *Quinn* case, a complaint of unlawful discrimination having been lodged with the Equal Employment Opportunity Commission, the Commission sought access to evidence from appellees and appellees petitioned the District Court for the District of Oregon under 42 U.S.C. § 2000e–9(c) to set aside the Commission's demands for access to evidence.

In both cases the District Court ruled that federal jurisdiction over the complaints of discrimination respecting employment did not exist, since state remedies had not been exhausted to the extent contemplated by the Act. In the *Gibson* case the action was dismissed. In the *Quinn* case the petition of appellees was granted.[1] In the *Gibson* appeal both the Equal Employment Opportunity Commission and the State of Oregon have intervened in support of the position of appellant. In the *Quinn* case the State of Oregon appears as *amicus curiae* in support of the Commission.

The procedures to be followed under 42 U.S.C. § 2000e in order to secure federal judicial relief were discussed by this court in Crosslin v. Mountain States Telephone and Telephone Company, 422 F.2d 1028, 1029 (9th Cir. 1970); judgment vacated without reaching the merits, 400 U.S. 1004, 91 S.Ct. 562, 27 L.Ed. 2d 618 (1971). At issue here (as in *Crosslin*) is the proper construction of § 2000e–5(b). That subsection provides in part that where state or local law prohibits the alleged employment practice and provides either criminal sanctions or other mode of relief " * * * no charge may be filed under subsection (a) of this section by the person aggrieved before the expiration of sixty days after proceedings have been commenced under the State or local law, unless such proceedings have been earlier terminated * * *."

---

* Honorable William P. Gray, United States District Judge for the Central District of California, sitting by designation.

1. Appellees in the *Quinn* case contend that the appeal should be dismissed as not timely taken. We disagree. Docketing of the order granting appellees' petition occurred on May 14, 1969 (not May 7, 1969). See 6A Moore's Federal Practice, 3525–26, and cases cited therein. Within ten days the Commission served a motion for reconsideration under Rule 59(e). See Rule 5(b) ("service by mail is complete upon mailing"). Service under Rule 59(e) of the Federal Rules of Civil Procedure stayed the running of time for appeal. See Rule 4(a), Federal Rules of Appellate Procedure. See also, 9 Moore's Federal Practice, 949–54. Reconsideration was denied on November 17, 1969, and the appeal was taken November 24, 1969.

Here, in both cases, complaints of the persons aggrieved by the alleged practices were lodged with the Civil Rights Division, Bureau of Labor, State of Oregon. In both cases the state agency had terminated state proceedings before charges were filed by the aggrieved persons with the federal Commission as a preliminary to suit.

The District Court felt, however, that Oregon had terminated improperly and prematurely; that the federal Act contemplates that something more be done by the state than the perfunctory efforts here made.[2] In support of this conclusion appellees in the *Quinn* case accuse the state and federal agencies of being party to something in the nature of a conspiracy: a "willful, planned bypassing of the Oregon State civil rights procedures."

■■ But it is not the purpose of the federal Act to require the states to take action or to provide federal supervision to assure the effectiveness of state action.[3] This was the basis for our holding in Crosslin v. Mountain

States Telephone and Telegraph Company, *supra*. There the EEOC had ignored the state interest because dissatisfied with the apparent lack of power in the state agency to accomplish appropriate relief through compulsion. We held that deference to the state was nonetheless required. The reason for our ruling applies here as well.[4] The federal government is not concerned with a lack of effective date effort, whether there be deficiency in grant of power or in energetic assertion of power. The federal purpose is to give respectful but modest deference to a state that has evidenced interest: sixty days within which to do whatever it chooses in order to accomplish its own resolution of the dispute. If (notwithstanding sufficient expression of state interest) state representatives choose to do nothing with a complaint duly filed with them and accordingly terminate state proceedings—whether with a helpless shrug of the shoulders or a turning out of pockets, or with no explanation whatsoever—the

2. In *Gibson* the state agent telephoned appellee union and talked to someone there, then told Gibson that there was nothing else that he could do and that Gibson's only alternative was to seek federal relief. The agent wrote to the Equal Employment Opportunities Commission that the state had terminated its proceedings in the matter.

In *Quinn* the state representative reported:

"That upon receipt of the complaints * * *, I made an investigation thereof, which included the taking of statements from each complainant and checked through the records at our office which had already been compiled on ILWU Local 8 and the Pacific Maritime Association in connection with previous complaints. I concluded at this point that further efforts at obtaining evidence from ILWU and Pacific Maritime Association without subpoena power at this stage of the proceeding would result in a mere restatement of the positions ILWU Local 8 and Pacific Maritime Association had previouly taken and which were already available to me in my files. I concluded from this investigation that I could find no sub-

stantial evidence supporting the allegations of the complaint because of my inability to subpoena records. I thereupon dismissed the cases and notified the representatives of the Equal Employment Opportunity Commission that the State of Oregon would not proceed further on the cases and that it was free to assume jurisdiction."

3. If the state has evidenced no interest in employment practices it may be completely ignored. 42 U.S.C. § 2000e–5(b).

4. In *Crosslin* it was said:

"Federal intervention does not depend on lack of suitable state relief. Nor is there any requirement for exhaustion of state remedies. On the contrary, the time limits for bringing a federal suit after the charge has reached the EEOC are clearly not designed to encourage an aggrieved person to await the outcome of state proceedings.

Federal deference to the states is defined in terms of time: sixty days. This is all, no matter how comprehensive the potential state remedies may be." 422 F.2d at 1031.

federal purpose has been fully met.[5] If state representatives fail to live up to apparent state expectations, or even the clear requirements of state law, a state problem may be presented but nothing of federal concern. The state has had its opportunity and the requirements of the Act have been satisfied.

In both cases: Reversed and remanded for further proceedings.

---

5. *See* the remarks of Senator Humphrey dealing with the purposes and limits of federal deference:

"[A]t the same time we recognized the absolute necessity of providing the Federal Government with authority to act in instances where States and localities did not choose to exercise these opportunities to solve the problems of civil rights in a voluntary and localized manner * * *. In instances where States are unable or unwilling to provide this protection, the Federal Government must have the authority to act." 110 Cong.Record, 12725 (June 4, 1964).